DAVID A. ROSENBERG
Nevada Bar No. 10738
U.S. BANKRUPTCY TRUSTEE
5030 Paradise Rd., #B-215
Las Vegas, Nevada 89119
Telephone: (702) 405-7312
Fax: (702) 947-2244
darosenberg@7trustee.net

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>**TINA C. MCKAY,**<br><br>Debtor. | Case No. BK-S-13-12701 BTB<br>Chapter 7<br><br>**TRUSTEE'S MOTION TO SELL ASSETS OF THE ESTATE FREE AND CLEAR OF LIENS AND ENCUMBRANCES AND TO SURCHARGE PROCEEDS OF SALE OR, IN THE ALTERNATIVE, MOTION TO SELL SUBJECT TO ANY AND ALL LIENS AND ENCUMBRANCES - REAL PROPERTY**<br><br>**[1513 LAKE PLACID TERRACE, HENDERSON, NV 89014]**<br><br>Date of Hearing:  March 20, 2014<br>Time of Hearing:  11:00 am |

Chapter 7 Trustee David A. Rosenberg ("Trustee") hereby files this *Motion To Sell Assets Of The Estate Free And Clear Of Liens And Encumbrances And To Surcharge Proceeds Of Sale Or, In The Alternative, Motion To Sell Subject To Any And All Liens And Encumbrances - Real Property Located at 1513 LAKE PLACID TERRACE, HENDERSON, NV 89014* ("Motion"), seeking authority from the Court, to be granted at a hearing ("Hearing") at the above Date and Time, allowing this sale ("Sale") pursuant to 11 U.S.C. §§ 105, 363 and 506(c) and Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 2002, 6004, 7004, and 9014.

The Court has jurisdiction in regard to this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

**Background**

1. Tina C. McKay ("Debtor") filed a Voluntary Petition under Chapter 7 of Title 11 in the United States Bankruptcy Court on March 29, 2013 [Dkt. No. 1].

2. The Trustee is duly appointed to administer the Debtor's estate ("Estate") [Dkt. No. 6].

3. Among the assets of the Estate there exists real property located at 1513 Lake Placid Terrace, Henderson, NV 89014 ("Property"). The Debtor valued the Property at $74,807 on his Schedule A filed March 29, 2013 [Dkt. No. 1].

4. On November 19, 2013, the Trustee's application to employ Bob Diamond ("Realtor") of Platinum Real Estate Professionals as real estate broker ("Broker") for the Estate was filed [Dkt. No. 24]. The Broker's application was approved by the Court's order entered on November 20, 2013 [Dkt. No. 25]. Thereafter, the Broker located potential buyers for the Property.

5. The Broker and the Trustee have contracted with Robert E. Means and Marilyn Means ("Purchaser") to sell the Property for $79,000 ("Purchase Price") on the terms provided for in the HUD-1 Settlement Statement ("HUD") and Residential Purchase Agreement ("RPA"). This includes a commission for the Broker equal to six percent (6%) of the Purchase Price ("Broker Commission"), which will be split with Purchaser's agent. *See* Exhibit 1.

6. The Broker has run comparables and, based on his experience and an independent Broker's Price Opinion ("BPO"), the Purchase Price represents fair market value. *See* Exhibit 2.

7. According to Debtor's Schedule D - Creditors Holding Secured Claims ("Schedule D") and the Preliminary Title Report ("Title Report"), creditors **Nationstar Mortgage, LLC** ("Lender"), Desert Linn Condominiums Association ("Association"), Bank of America, N.A., U.S. Department of Housing & Urban Development, Veterans Affairs, OneNevada Credit Union, and Nevada Association Services, Inc. (hereafter, collectively, "Lienholders") hold secured liens recorded against the Property. *See* Exhibit 3.

8. Additionally, the Trustee estimates that the total amount owed to the Lienholders is $157,807.40 based upon Schedule D and the Title Report.

9. On September 27, 2013, the Lender filed a Motion for Relief from the Automatic Stay ("Lift Stay Motion") [Dkt. No. 18]. An Order Terminating the Automatic Stay was entered on November 18, 2013 [Dkt. No. 22].

10. In its Lift Stay Motion, the Lender did not list its cost of sale ("Cost of Sale").

11. As of the filing of this Motion, the Lender still has not foreclosed on the Property.

**Sale Motion**

12. The Trustee wishes to consummate a bankruptcy court approved "short sale" of the Property—pursuant to § 363(b) and (f)—to the Purchaser at the Purchase Price.

13. Pursuant to §§ 363(b)(1) and 105(a), this Court may authorize the implementation of sale terms and procedures. *See In re Mama's Original Foods, Inc.,* 234 B.R. 500, 503 (Bankr. C.D. Cal. 1999)("In selling property of the estate, a trustee is required to market the property in the manner that is customary for property of the kind at issue."). The Sale terms and procedures detailed in the Motion, RPA, and HUD—which correspond closely to the manner of sale customarily recognized in the home resale marketplace—ensure that that the Property generates the highest value for the Estate.

14. Included among these Sale terms is the substitution of buyer clause ("Substitution of Buyer Clause"), a provision which allows the Trustee to assign the Purchaser's purchase rights under the RPA to a substitute buyer ("Substitute Buyer"). The Substitute Buyer may then exercise those purchase rights and, like a back-up bidder, close escrow on the Property without the need for the Trustee to seek Court approval for what is substantially the same Sale.[1] The Trustee may elect to substitute in a different buyer if <u>ALL</u> of the following conditions are met:

(i) The Substitute Buyer signs a notarized affidavit attesting to his disinterestedness. This attestation document will be filed on the docket as part of the Trustee's Report of Sale.

(ii) The Substitute Buyer agrees to accept and assume the entire RPA and HUD as if he had negotiated each word himself and had signed them with full knowledge of their contents.

(iii) The Substitute Buyer must <u>guarantee</u> that, when the transaction closes, the Lienholders (or alternatively, if their liens are in dispute, the Estate) will receive <u>at least</u> the same Proceeds under the HUD as they would if the Purchaser had closed the Sale. The HUD and RPA may be reworked to allow for any changed conditions since approval of the Sale, and all terms may be modified, at the Trustee's discretion and without seeking Court approval, so long as—when everything is said and done—the Lienholders are paid

---

[1] The Substitution of Buyer Clause is analogous to how resolicitation of creditors is not required to confirm an otherwise consensual plan that is modified in ways deemed not to be materially adverse to previously consenting creditors. *See* FED. R. BANKR. P. 3019(a); *In re New Power Co.*, 438 F. 3d 1113, 1117-18 (11th Cir. 2006).

- 3 -

the same payoff amounts as contemplated in the original Sale order.[2] To provide full disclosure, any new HUD/RPA will be included as part of the Trustee's Report of Sale. Hence, the Trustee asks to be allowed to make necessary changes to advance the Sale so long as these changes have no materially adverse effect on the Trustee, the Estate, or the Lienholders.

15. Also included in these Sale terms are limitations on who can bid at the Hearing. The first parties to bid will be the Lienholders, who may credit bid to the full extent of § 363(k), subject to the Broker Commission and § 506(c) Carve-out for Trustee's compensation; both of these out-of-pocket expenses must be paid if any of the Lienholders elects to take title at the Hearing.[3] If all of the Lienholders decline to credit bid and other bidders wish to participate, the Trustee will move the Court to either conduct an auction at the Hearing or else approve the Sale at the Purchase Price and allow the Trustee to use the Substitution of Buyer Clause to carry out an auction at his office ("Private Auction") in the days following the Hearing. At that Private Auction, all potential buyers, as well as the Purchaser, will have a full and fair opportunity to overbid. Regardless of who ultimately takes title to the Property—be it the Purchaser, the Substitute Buyer, or one of the Lienholders via credit bid—the Sale order will reference that successful party's identity as the buyer ("Buyer").

16. Having extensively marketed the Property on the Multiple Listing Service ("MLS") prior to entering into the RPA, the Trustee does not believe that additional marketing or complicated procedures (beyond instituting those sale terms already described) would realize greater value for the Property. Accordingly, the Trustee requests that the Court, pursuant to § 363(b)(1), authorize him to sell the Property by private sale. *See In re Equity Funding Corp. of America*, 492 F.2d 793, 794 (9th Cir.), *cert. denied*, 419 U.S. 964 (1974)(where an asset's market value is likely to deteriorate substantially in the near future, a sale is in the estate's best interest).

17. Section 363(b)(1) specifically allows for sales of property of the estate outside of the ordinary course of business, after notice and a hearing, provided the trustee can demonstrate a "business justification" for the sale. *See In re 240 North Brand Partners, Ltd.*, 200 B.R. 653,

---

[2] This insures that Lienholders are paid no less with a Substitute Buyer than they would receive under the original HUD and RPA approved by the Court.

[3] These surcharges are reasonable and necessary, as the Lender's alternative to taking title (free and clear) via a credit bid in bankruptcy is to foreclose under state law, which carries a greater Cost of Sale and provides lesser title.

- 4 -

659 (9th Cir. BAP 1996); *In re Engman*, 395 B.R. 610, 622-623 (W.D. Mich. 2008)(using section 363(b) sales to illustrate the chapter 7 trustee's discretionary and conditional authority to make decisions on behalf of the estate and the role of judicial scrutiny). Here, the Trustee is convinced that this Sale is in the best interests of the Estate and the Lienholders, as the Purchase Price meets or exceeds the Property's fair market value. The Trustee is also convinced that he has adequately articulated a business justification for his decision, since: (1) the Estate's share of the Proceeds will permit a dividend to be paid to unsecured creditors and (2) absent this Sale, the Estate and the Lienholders will both be damaged should the Property's value continue to decline.

18. The Trustee further submits that, in his business judgment, the best course of action now is to sell the Property free and clear of liens, encumbrances, and interests pursuant to §§ 363(f)(2) and 363(f)(5). The Trustee expressly reserves the right to later argue § 363(f)(4).

19. As of the filing of this Motion, none of the Lienholders has raised any objections to the Property being sold by the Trustee. If, by the date of the Hearing, these Lienholders still do not object to this Motion, then they should be deemed to have consented under § 363(f)(2). *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002)(failure to object may constitute consent, if there was adequate notice); *In re Tabone, Inc.,* 175 B.R. 855, 858 (Bankr. D. N.J. 1994)(failure to object to notice of sale or attend hearing deemed consent to sale for purposes of § 363); *In re Elliot,* 94 B.R. 343, 345-46 (Bankr. E.D. Pa. 1988)(implied consent found where bank received notice of proposed sale and did not file a timely objection).

20. Additionally, to the extent that Lienholders with junior interests do object to the Sale, these Lienholders may have their liens removed for less than full value in various proceedings under Nevada and non-bankruptcy law.[4] *See In re Jolan, Inc.*, 403 B.R. 866 (Bankr. W.D. Wash. 2009). This is because, under § 363(f)(5), if the Lender was to foreclose upon its interest in the Property, applicable nonbankruptcy law would permit a sale free and clear of all junior interests and/or all junior lienholders could be compelled to accept a money satisfaction of their interests. *See Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25 (9th Cir. BAP 2008).

---

[4] *See* NRS § 78.700, 361.585, 361.595, 361.610, 148.130, 148.140 and 26 U.S.C. §§ 6335, 6339(c), 6342. *See also* NRS §§ 40.430 (judicial foreclosure) and 107.080, 116.3116 (nonjudicial foreclosure).

- 5 -

21. The Trustee therefore asks this Court (in accordance with the RPA, HUD, and Motion) to approve the Sale and authorize the title company to disburse the Purchase Price monies, including paying all realtor fees, taxes, expenses, and costs associated with completing this Sale. Following Sale, the Trustee's general default procedure is to instruct the title company to hand over the remaining Proceeds directly to the Trustee, to be held in trust pending a determination as to ownership and an order directing distribution ("Order on Proceeds"). *See In re JL Building, LLC*, 452 B.R. 854, 861 (Bankr. D. Utah 2011)(requiring all net proceeds from sale of secured real property be held in trust by the chapter 7 trustee pending a full investigation of claims and a further order directing disbursement). During that time in trust, the Lienholders are adequately protected, as their interests will attach to the Proceeds, and, over the ninety (90) days following entry of the Sale order, either: (a) the Lienholders may demonstrate to the Trustee that they have valid claims to the Proceeds; or (b) the Trustee may elect to file an adversary complaint to determine the priority, extent, validity, and existence of liens against the Proceeds.

22. Alternatively, if the Trustee is given documentation to verify each of the Lienholders' claims (either prior to or immediately after this Motion is granted), he will not need to use the default procedure (detailed above) to obtain the Order on Proceeds; instead, he will simply instruct the title company to pay the Proceeds directly to these secured parties. Ideally, each of the Lienholders will provide this documentation to the Trustee by filing a secured proof of claim in the Debtor's case. If no claim is filed, however, the Trustee may also elect to treat a motion to lift stay previously filed by the Lienholders as an informal proof of claim, provided said motion has adequate documentation attached to it. *See In re Matter of Pizza of Hawaii, Inc.,* 761 F.2d 1374, 1381 (9th Cir. 1985)(holding that motions for relief from the automatic stay constitute informal proofs of claim because they "state an explicit demand showing the nature and amount of the claim against the estate, and evidence an intent to hold the debtor liable").

23. Any costs and expenses which have been incurred—or will be incurred—by the Estate directly benefit the Lienholders and are reasonable and necessary pursuant to 11 U.S.C. § 506(c). *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000). Courts have long recognized that expenses of sale and of preparation for sale are recoverable by a trustee. *See In re Marino*, 794 F.2d 1367, 1370 (9th Cir. 1986); *In re Anderson*, 66 B.R. 97, 99

- 6 -

(9th Cir. BAP 1986)("We read the Code to provide for payment of the trustee's direct costs of sale out of the proceeds of the sale before distribution to the secured creditors."). As such, this Court will allow the Trustee to surcharge the Proceeds to pay all necessary and reasonable expenses/costs, whether arising before or after Sale, incurred by the Estate in completing the Sale and distributing the Proceeds, including but not limited to attorney's fees and expenses related to or arising from administering the Property and the Proceeds (including, if necessary, all actions to investigate/determine lien validity), realtor fees and expenses, and accountant fees and expenses.

24. The Trustee will also be reimbursed his compensation as a surcharge pursuant to § 506(c) rather than seeking payment under 11 U.S.C. § 330(a), as the § 506(c) Carve-out is more like a claim by the Trustee for providing personal services that directly benefitted the Lienholders (akin to a trustee being paid for conducting a nonjudicial foreclosure sale) than an administrative fee charged against the unsecured creditors' recovery.[5] Still, whether the Trustee's fees are awarded under §§ 506(c) or 330(a), 11 U.S.C. § 326(a) remains the logical starting point. *See In re Salgado–Nava,* 473 B.R. 911, 921 (9th Cir. BAP 2012)("absent extraordinary circumstances, chapter 7, 12 and 13 trustee fees should be presumed reasonable if they are requested at the statutory rate. Congress would not have set commission rates for bankruptcy trustees in §§ 326 and 330(a)(7), and taken them out of the considerations set forth in § 330(a)(3), unless it considered them reasonable in most instances. Thus, absent extraordinary circumstances, bankruptcy courts should approve chapter 7, 12 and 13 trustee fees without any significant additional review.").

25. Here, the Trustee's commission under § 326(a) will be computed based upon the full Purchase Price and paid on all monies distributed by the Trustee, including payments to the holders of secured claims. The Trustee therefore requests a § 506(c) Carve-out in the amount of $7,200, which equals his statutory maximum commission under § 326(a) for a Sale at the Purchase Price. This $7,200 will be paid to the Trustee—via the Order on Proceeds or directly from escrow—and, upon receipt, the Trustee will promptly make a gift of half (1/2) of his

---

[5] While the Trustee labels this a § 506(c) Carve-out, that is a misnomer. Generally, a carve-out is a consensual payment to unsecured creditors while § 506(c) is a provision which forces secured creditors to repay administrative expense incurred preserving or disposing of collateral. Here, the Trustee relies on §§ 326(a) and 506(c), combined with allowable gifting practices, to justify this "involuntary" carve-out. Doing so is entirely consistent with *Hartford Underwriters*, which shows how Congress only provides the ability to recoup these expenses to the trustee.

- 7 -

commission (no less than $3,600) to the Estate, to be disbursed to unsecured creditors. This gift will provide a meaningful distribution to the Estate.

26. The Trustee further requests a finding that the Sale of the Property is made in good faith in accordance with 11 U.S.C. § 363(m), such that any appeal will not affect the validity of the transaction. The Purchaser is not an insider of the Debtor, and the Sale represents an arms-length transaction between the parties.

27. The Trustee also believes that it is in the best interests of the Lienholders and the Estate to conclude the Sale as expeditiously as possible. Accordingly, the Trustee asks the Court to waive the provisions of Bankruptcy Rule 6004(h) and provide that the Sale order takes effect immediately upon entry rather than being stayed until the expiration of 14 days after its entry.

28. Finally, adequate notice of the Sale has been given. *See* Bankruptcy Rules 2002, 6004, 7004, and 9014; *see also In re Miell*, 439 B.R. 704, 707-710 (8th Cir. BAP 2010)(discussing what constitutes adequate notice to secured creditors when a chapter 7 trustee files a motion to sell real property free and clear); *In re MMH Auto. Group, LLC*, 385 B.R. 347, 356-61 (Bankr. S.D. Fla. 2008)(discussing which parties are entitled to receive notice when a chapter 7 trustee files a motion to sell real property free and clear). The Trustee has complied with the above requisites by properly serving the notice, the Motion, and all related exhibits and declarations on the Lienholders and any other parties in interest. Additionally, a copy of the notice was served on the entire creditor matrix. As such, no further notice should be necessary.

**Alternatively, Grant The Sale Subject To All Liens And Encumbrances Under § 363(b)**

29. In the event that the Trustee is unable to satisfy § 363(f) at the time of the Hearing, the Trustee asks the Court to grant his alternative relief motion instead, which seeks permission to sell the Property under § 363(b) subject to all liens and encumbrances, with the final sale price ("Final Sale Price") to be determined as follows: (1) bidding at the Private Auction will begin with an initial bid of $5,000, with overbids going up from there (or, if there are no bids at that price, bidding will go down from that initial bid.

30. Additionally, the Trustee also seeks Court approval herein to pay the Realtor from the Final Sale Price for the costs expended and professional services rendered in the failed §

363(f) sale, as well as to cover future fees and costs needed to assist the Trustee in closing the § 363(b) sale, in an amount not to exceed $1,000.

31. Whatever the Final Sale Price obtained at the Private Auction, that amount will be the highest and best, as all potential buyers will have an opportunity to overbid. The Sale order will reference the successful party who bids the Final Sale Price as the buyer ("§ 363(b) Buyer"). The sale order will also expressly provide that the Trustee is permitted to execute and give the § 363(b) Buyer whatever documentation (including, but not limited to, a quitclaim deed) necessary to transfer title in the Property from the name of the Debtor to the § 363(b) Buyer. This § 363(b) sale, in addition to transferring legal ownership to the § 363(b) Buyer subject to all liens, encumbrances, and interests, will be made on an "As is, Where is" basis, without any warranty or representation of any kind. All rights, benefits, liabilities, and interests that the Debtor had in the Property, to the extent that they entered the Estate when the Debtor filed bankruptcy, will be transferred to the § 363(b) Buyer. As a result, the Estate and the Debtor shall be freed of the Property.

32. Finally, because the secured creditors filed an opposition to the Court allowing a sale "free and clear" under § 363(f), this Court cannot, at this time and under the present circumstances, grant that relief to the Trustee. Nevertheless, in the event that these same opposing secured creditors were to change their minds and consent to a § 363(f) sale—sometime after the issuance of this Order granting the alternative relief under § 363(b) but before the "subject to" Sale to the § 363(b) Buyer is completed—the Court will allow this Order to also serve as a retroactive grant of authority for the Trustee to sell the Property "free and clear" under § 363(f), provided, of course, that any "free and clear" Sale retroactively approved by this Order must be made in accordance with all terms and conditions demanded by the previously opposing secured creditors. Assuming these requirements for retroactivity are met, the need for the Trustee to file a new motion to approve a Sale under § 363(f) will be waived. The Trustee may simply submit a second, amended order granting the Sale "free and clear", and the Court shall promptly enter that second order.

**WHEREFORE**, Trustee respectfully requests that the Court, after notice and a Hearing:

- 9 -

(1)     Approve the Trustee's Motion to Sell Assets of the Estate Free and Clear of Liens and Encumbrances and authorize the Trustee to execute any and all documents necessary to effectuate the Sale of the Property;

(2)     Approve the sale terms and procedures detailed in the Motion, RPA, and HUD, as well as approve the Trustee's use of a Substitution of Buyer Clause provision.

(3)     Approve the Trustee's Motion to Surcharge Proceeds of Sale and authorize the Trustee, pursuant to § 506(c), to surcharge the Proceeds to pay any necessary and reasonable expenses incurred by the Estate, including but not limited to trustee fees and expenses, attorney's fees and expenses, realtor fees and expenses, and accountant fees and expenses;

(4)     Order that any distribution of the Proceeds to the Lienholders shall be less the costs and expenses of Sale, including compensation of the Trustee pursuant to § 326(a), with the Trustee's commission be computed and paid upon any money disbursed or turned over to any parties in interest including holders of secured claims;

**OR**

(5)     If the Trustee is unable to satisfy § 363(f) at the Hearing, approve instead the Trustee's requested § 363(b) alternative relief, as detailed in the Motion To Sell Subject To Any And All Liens And Encumbrances;

(6)     Authorize the Trustee to pay the Realtor and execute any and all documents necessary to effectuate the § 363(b) Sale of the Property;

**AND**

(7)     Find that the Purchaser is purchasing the Property for a fair and reasonable sales price, through an arms-length transaction, in good faith pursuant to 11 U.S.C. § 363(m);

(8)     Waive the provisions of Bankruptcy Rule 6004(h) and provide that the Sale order is effective immediately upon entry;

(9)     Find that adequate notice has been given;

(10)    Any other and further relief as this Court deems just and proper.

DATED:  February 13, 2014.                    **U.S. BANKRUPTCY TRUSTEE**
                                              By: */s/ David A. Rosenberg*
                                              David A. Rosenberg, Trustee

- 10 -